NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

Office of the General Counsel
625 Broadway, 14th Floor, Albany, New York 12233-1500
P: (518) 402-9185 | F: (518) 402-9018
www.dec.ny.gov

October 29, 2015

SENT VIA FIRST CLASS MAIL and by
ELECTRONIC MAIL

Mr. Carl P. Garvey, Esq.
RACER Trust
500 Woodward Avenue, Ste. 2650
Detroit, MI 48226
cgarvey@racertrust.org

RE: Order on Consent and Administrative Settlement
Index No.: R7-0853-15-06
RACER Trust
Site Name: General Motors – Fisher Guide
Site No.: 734057

Dear Mr. Garvey:

Enclosed for your files is a copy of the fully executed Order on Consent and Administrative Settlement referencing the General Motors – Fisher Guide site located at 1000 Town Line Road, Salina, New York and the RACER Trust.

If you have any further questions or concerns relating to this matter, please contact attorney Margaret Sheen at 315-426-7435.

Respectfully yours,

Maria Mastroianni
Legal Assistant
Bureau of Remediation Section A
Office of General Counsel

ec: Brendan Mullen, PE
RACER Trust
bmullen@racertrust.org

Clare F. Leary, PE
O'Brien & Gere
Clare.Leary@obg.com

Argie Cirillo, Esq.
USEPA, Region 2
Cirillo.argie@epa.gov

M. Sheen, Esq., NYSDEC
Margaret.Sheen@dec.ny.gov

**NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION**

In the Matter of the Development and Implementation of a Remedial Program for an Inactive Hazardous Waste Disposal Site under Article 27, Title 13 of the Environmental Conservation Law by

**Revitalizing Auto Communities Environmental Response Trust ("RACER Trust")**

**RESPONDENT**

Site Name: General Motors – Fisher Guide

Site Address: 1000 Town Line Road
Salina, New York
Onondaga County

**OU-1 (RI/FS/RD/RA) and OU-2 (RD/RA) ORDER ON CONSENT and ADMINISTRATIVE SETTLEMENT**

Index # R7-0853-15-06

Site # 734057

**WHEREAS,**

1. A. The New York State Department of Environmental Conservation ("Department") is responsible for inactive hazardous waste disposal site remedial program(s) ("Remedial Program(s)") pursuant to Article 27, Title 13 of the Environmental Conservation Law ("ECL") and Part 375 of Title 6 of the Official Compilation of Codes, Rules and Regulations ("6 NYCRR") and may issue orders consistent with the authority granted to the Commissioner by such statute.

B. The Department is responsible for carrying out the policy of the State of New York to conserve, improve and protect its natural resources and environment and control water, land and air pollution consistent with the authority granted to the Department and the Commissioner by Article 3, Title 3 of the ECL.

C. This Order on Consent and Administrative Settlement ("Order") is issued pursuant to the Department's authority under, *inter alia,* ECL Article 27, Title 13 and ECL § 3-0301, and resolves Respondent's liability to the State as provided at 6 NYCRR § 375-1.5(b)(5).

2. **Revitalizing Auto Communities Environmental Response Trust** ("Respondent" or "RACER Trust") is an independent trust with a principal place of business at 500 Woodward Avenue, Suite 2650, Detroit, Michigan 48226.

3. RACER Trust was created as an environmental response trust in March 2011 by the U.S. Bankruptcy Court to clean up and position for redevelopment properties and other facilities owned by the former General Motors Corp. ("General Motors") before its 2009 bankruptcy. [*See* **Environmental Response Trust Consent Decree and Settlement Agreement** ("Trust Consent Decree"), October 19, 2010]. The State of New York is a signatory to the Trust Consent Decree, along with 13 other States, the St. Regis Mohawk Tribe, and the United States. Under the Trust Consent Decree, the Sole Beneficiary of RACER Trust is the United States.

4. The former General Motors- Fisher Guide Site (the "Site"), including General Motor's former manufacturing plant, is located off Townline Road in the Town of Salina, Onondaga County, New York. Exhibit "A" is a map of the facility's general location. The former manufacturing plant real property is owned by RACER Trust's wholly-owned affiliate, RACER Properties LLC, a Delaware limited liability company authorized to operate in the State of New York. Under the Trust Consent Decree, the Department was identified as the Lead Agency with respect to this Site.

5. The Site is currently listed in the Department's *Registry of Inactive Hazardous Waste Disposal Sites* as Site Number 734057 with a Classification "2" pursuant to ECL § 27-1305. The Site consists of two Operating Units (OU 1 and OU 2). The Site boundaries (and its operable units) are defined in the March 2015 Record of Decision ("ROD") for OU 2. As described in the ROD, the Site consists of the former plant, located south of Ley Creek on Townline Road and approximately 9,200 linear feet of Ley Creek including the adjacent floodplains between Townline Road and the upstream plane of the Route 11 Bridge (a.k.a. Brewerton Road). OU1 addresses the former plant and groundwater on, and relating to the former plant, and OU2 addresses other media not addressed under OU1.

6. General Motors had entered into an Order on Consent #D-7-0001-97-06 (effective September 25, 1997 and Addendum to Order effective July 11, 1999) in which General Motors had agreed to perform a Remedial Investigation/Feasibility Study ("RI/FS") for the entire Site (both OU 1 and OU 2). A central purpose for GM of Order on Consent #D-7-0001-97-06 and its Addendum is to govern the redevelopment of the former plant building and associated structures, including modification thereto, to provide for use of the former plant by commercial and light industrial tenants. Respondent assumed Order on Consent #D-7-0001-97-06 and its Addendum through the Trust Consent Decree. The RI/FS for OU 2 was completed with the issuance of the March 2015 ROD of the operable unit. The OU 2 ROD is incorporated into this Order and attached as Exhibit "B". Because of the Site's status as a subsite of the Onondaga Lake National Priorities List Superfund Site and the cooperation between the Department and the United States Environmental Protection Agency ("USEPA") in the Onondaga Lake cleanup, the ROD for OU 2 was signed by the Department and by USEPA, and the ROD for OU 1 will also be cosigned by the Department and USEPA.

7. The RI for OU 1 is near completion and the FS for OU 1 is underway.

8. Respondent and the Department agree that the goals of this Order are for Respondent to (i) develop and implement, in accordance with the March 31, 2015 ROD for OU 2, a Remedial Program for the Site that shall include the design, implementation, operation, maintenance and monitoring of the selected remedial alternative for OU 2; (ii) complete the RI/FS for OU 1; (iii) upon the Department's issuance of the ROD for OU 1, develop and implement, in accordance with the ROD for OU 1, a Remedial Program for OU 1 that shall include the design, implementation, operation, maintenance and monitoring of the selected remedial alternative for OU 1 and (iv) reimburse the State's administrative costs, to the extent provided in this Order and in accordance with the Trust Consent Decree.

9. Respondent consents to the issuance of this Order without (i) an admission or finding of liability, fault, wrongdoing, or violation of any law, regulation, permit, order, requirement, or standard of care of any kind whatsoever; and (ii) an acknowledgment that a release or threatened release of hazardous waste at or from the Site constitutes a significant threat to the public health or environment.

10. Solely with regard to the matters set forth below, Respondent hereby waives any right to a hearing as may be provided by law, consents to the issuance and entry of this Order, and agrees to be bound by its terms. Respondent consents to and agrees not to contest the authority or jurisdiction of the Department to issue or enforce this Order, and agrees not to contest the validity of this Order or its terms or the validity of data submitted to the Department by Respondent pursuant to this Order .

**NOW**, having considered this matter and being duly advised, **IT IS ORDERED THAT**:

I. Initial Submittal

It is agreed that prior submissions to the Department satisfy the required Records Search Report.

II. Development, Performance, and Reporting of Work Plans

A. Work Plans

All activities at the Site that comprise any element of a Remedial Program must be conducted pursuant to one or more Department-approved work plans ("Work Plan" or "Work Plans") and this Order and all activities must be consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300, as required under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9600 *et seq*. The Work Plan(s) under this Order must address both on-Site and off-Site conditions relating to the Site and must be developed and implemented in accordance with 6 NYCRR § 375-1.6(a). All Department-approved Work Plans will be incorporated into and become enforceable parts of this Order. Upon approval of a Work Plan by the Department, Respondent must implement such Work Plan in accordance with the schedule contained therein, subject to the force majeure

provisions set forth in Section IV below. Nothing in this Subparagraph mandates that any particular Work Plan be submitted.

Each Work Plan submitted must use one of the following captions on the cover page:

1. Remedial Investigation/Feasibility Study ("RI/FS") Work Plan: a Work Plan whose objective is to perform a Remedial Investigation and a Feasibility Study;

2. Interim Remedial Measure ("IRM") Work Plan: a Work Plan whose objective is to provide for an Interim Remedial Measure;

3. Remedial Design/Remedial Action ("RD/RA") Work Plan: a Work Plan whose objective is to provide for the development and implementation of final plans and specifications for implementing the remedial alternative set forth in the Record of Decision ("ROD"); or

4. Site Management Plan ("SMP"): a Work Plan whose objective is to identify and implement the institutional and engineering controls required for the Site, as well as any necessary monitoring and/or operation and maintenance of the remedy.

B. Submission/Implementation of Work Plans

1. (a) A schedule for completion of the OU 1 FS must be submitted to the Department within fifteen (15) days after the effective date of this Order. Within sixty (60) days of the Department's issuance of the ROD for OU 1, Respondent must submit the OU 1 RD/RA Work Plan. The OU1 ROD shall be incorporated into this Order and attached as Exhibit C.

(b) The OU 2 RD/RA Work Plan must be submitted to the Department within sixty (60) days after the effective date of this Order.

(c) The Department may request that Respondent submit additional or supplemental Work Plans for the Site. Within sixty (60) days after the Department's written request, Respondent must submit the requested additional or supplemental Work Plan.

(d) Respondent may opt to propose one or more additional or supplemental Work Plans (including one or more IRM Work Plans) at any time; the Department will review for appropriateness and technical sufficiency.

(e) Any request made by the Department under Subparagraph II.B.1.(c) will be subject to dispute resolution pursuant to Paragraph XII.

2. A Professional Engineer must stamp and sign all Work Plans other than RI/FS Work Plans.

3. During all field activities conducted under this Order , Respondent must have on-Site a representative who is qualified to supervise the activities undertaken in accordance with the provisions of 6 NYCRR § 375-1.6(3).

C. Modifications to Work Plans

The Department will notify Respondent in writing if the Department determines that any element of a Department-approved Work Plan needs to be modified in order to achieve the objectives of the Work Plan or to ensure that the Remedial Program otherwise protects human health and the environment. Upon receipt of such notification, Respondent must implement such modification in accordance with the timeframes provided, subject to the force majeure provisions set forth in Section IV below.

D. Submission of Final Reports and Periodic Reports

1. In accordance with the schedule contained in a Work Plan, Respondent must submit a final report as provided at 6 NYCRR § 375-1.6(b) and a final engineering report as provided at 6 NYCRR § 375-1.6(c).

2. Any final report or final engineering report that includes construction activities must include "as built" drawings showing any changes made to the remedial design or the IRM.

3. In the event that the final engineering report for the Site requires Site Management, Respondent must submit periodic reports prepared in accordance with 6 NYCRR § 375-1.8(h)(3). Such periodic report must be signed by a Professional Engineer or by such other qualified environmental professional as the Department may find acceptable and must contain a certification as provided at 6 NYCRR § 375-1.8(h)(3). Respondent may petition the Department for a determination that the institutional and/or engineering controls may be modified or terminated. Such petition must be supported by a statement by a Professional Engineer explaining why proposed modifications are appropriate or that such controls are no longer necessary for the protection of public health and the environment. The Department will not unreasonably withhold its approval of such petition. Additionally, the Department may determine that the institutional and/or engineering controls should be modified or terminated. In the event the Department determines modification or termination to the institutional and/or engineering controls is warranted, the Department shall notify the Respondent, and Respondent shall modify or terminate any such controls, as appropriate.

E. Review of Submittals

1. The Department shall make a good faith effort to review and respond in writing to each submittal Respondent makes pursuant to this Order within sixty (60) days. The Department's response shall include, in accordance with 6 NYCRR 375-1.6(d), an approval, modification request, or disapproval of the submittal, in whole or in part.

i. Upon the Department's written approval of a Work Plan, such Department-approved Work Plan shall be deemed to be incorporated into and made a part of this Order and shall be implemented in accordance with the schedule contained therein.

ii. If the Department disapproves a submittal, it shall specify the reasons for its disapproval. Within fifteen (15) days after the date of the Department's written notice that Respondent's submittal has been disapproved, Respondent shall make a revised submittal that addresses all of the Department's stated reasons for disapproving the first submittal in accordance with the time period set forth in 6 NYCRR 375-1.6(d)(4). In the event that Respondent's revised submittal is disapproved, the Department shall set forth its reasons for such disapproval in writing and Respondent shall be in violation of this Order unless it invokes dispute resolution pursuant to Paragraph XII and its position prevails.

2. Within thirty (30) days after the Department's approval of a final report, Respondent shall submit such final report, as well as all data gathered and drawings and submittals made pursuant to such Work Plan, in an electronic format acceptable to the Department. If any document cannot be converted into electronic format, Respondent shall submit such document in an alternative format acceptable to the Department.

F. Notification Requirement

Respondent must provide the results of any testing of real property conducted pursuant to this Order as required by ECL § 27-2403.

G. Department's Issuance of a ROD

Respondent must cooperate with the Department and provide reasonable assistance, consistent with the Citizen Participation Plan, in soliciting public comment on the proposed remedial action plan ("PRAP"), if any. After the close of the public comment period, the Department will select a final remedial alternative for the Site in a ROD. Nothing in this Order will be construed to abridge any rights of Respondent, as provided by law, to judicially challenge the Department's ROD.

H. Release and Covenant Not to Sue

Upon the Department's issuance of a Certificate of Completion as provided at 6 NYCRR § 375-1.9 and § 375-2.9, Respondent will obtain the benefits conferred by such provisions, subject to the terms and conditions described therein.

I. Access

Respondent shall use best efforts to obtain all Site access, permits, easements, approvals, institutional controls, and/or authorizations necessary to perform Respondent's obligations under this Order, including all Department-approved Work Plans and the schedules contained therein. If, despite Respondent's best efforts, any access, permits, easements, approvals, institutional controls, or authorizations cannot be obtained, Respondent shall

promptly notify the Department and include a summary of the steps taken. The Department will, as it deems appropriate and within its authority, assist Respondent in obtaining same.

III. Progress Reports

Respondent must submit written progress reports to the parties identified in Subparagraph XI.A.1 by the 10th Day of each month commencing with the month subsequent to the approval of the first Work Plan and ending with the Termination Date, unless a different frequency is set forth in an approved Work Plan. Such reports must, at a minimum, include: all actions taken pursuant to this Order during the reporting period and those anticipated for the upcoming reporting period; all approved modifications to work plans and/or schedules; all results of sampling and tests and all other data received or generated by or on behalf of Respondent in connection with the Site during the reporting period, including quality assurance/quality control information; information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule, and efforts made to mitigate such delays; and information regarding activities undertaken in support of the Citizen Participation Plan during the reporting period and those anticipated for the upcoming reporting period; and the name of Respondent's Project Manager.

IV. Penalties and Force Majeure

A. 1. Respondent's failure to comply with any term of this Order constitutes a violation of this Order, the ECL, and 6 NYCRR § 375-2.11(a)(4). Nothing herein abridges Respondent's right to contest any allegation that it has failed to comply with this Order.

2. Payment of any penalties will not in any way alter Respondent's obligations under this Order.

B. 1. Respondent will not suffer any penalty or be subject to any proceeding or action in the event it cannot comply with any requirement of this Order as a result of any Force Majeure Event as provided at 6 NYCRR § 375-1.5(b)(4). Respondent must use best efforts to anticipate the potential Force Majeure Event, best efforts to address any such event as it is occurring, and best efforts following the Force Majeure Event to minimize delay to the greatest extent possible. "Force Majeure" does not include Respondent's economic inability to comply with any obligation, the failure of Respondent to make complete and timely application for any required approval or permit, and non-attainment of the goals, standards, and requirements of this Order.

2. Respondent must notify the Department in writing within five (5) days of the onset of any Force Majeure Event. Failure to give such notice within such five (5) day period constitutes a waiver of any claim that a delay is not subject to penalties. Respondent will be deemed to know of any circumstance which was known by Respondent, any entity controlled by it, or its contractors.

3. Respondent will have the burden of proving by a preponderance of the evidence that (i) the delay or anticipated delay has been or will be caused by a Force Majeure Event; (ii) the duration of the delay or the extension sought is warranted under the

circumstances; (iii) best efforts were exercised to avoid and mitigate the effects of the delay; and (iv) Respondent complied with the requirements of Subparagraph IV.B.2 regarding timely notification.

4. If the Department agrees that the delay or anticipated delay is attributable to a Force Majeure Event, the time for performance of the obligations that are affected by the Force Majeure Event will be extended for a period of time equivalent to the time lost because of the Force Majeure event, in accordance with 6 NYCRR § 375-1.5(b)(4).

5. If the Department rejects Respondent's assertion that an event provides a defense to non-compliance with this Order pursuant to Subparagraph IV.B, Respondent will be in violation of this Order unless it invokes dispute resolution pursuant to Paragraph XII and Respondent's position prevails.

V. Entry upon Site

A. Respondent hereby consents, upon reasonable notice under the circumstances presented, to entry upon the Site (or areas in the vicinity of the Site which may be under the control of Respondent) by any duly designated officer or employee of the Department or any State agency having jurisdiction with respect to matters addressed pursuant to this Order, and by any agent, consultant, contractor, or other person so authorized by the Commissioner or his designee, all of whom must abide by the health and safety rules in effect for the Site, for inspecting, sampling, copying records related to the contamination at the Site, testing, and any other activities necessary to ensure Respondent's compliance with this Order . Upon request, Respondent must (i) provide the Department with suitable work space at the Site, including access to a telephone and to the Internet, to the extent available, and (ii) permit the Department full access to all non-privileged records relating to matters addressed by this Order. Raw data is not considered privileged and that portion of any privileged document containing raw data must be provided to the Department. In the event Respondent is unable to obtain any authorization from third-party property owners necessary to perform its obligations under this Order, the Department may, consistent with its legal authority, assist in obtaining such authorizations.

B. The Department will have the right to take its own samples and scientific measurements and the Department and Respondent will each have the right to obtain split samples, duplicate samples, or both, of all substances and materials sampled. The Department will make the results of any such sampling and scientific measurements available to Respondent.

VI. Payment of State Costs

A. According to Department records, currently billed State Costs have been paid to date.

B. In accordance with and subject to the Trust Consent Decree (and the Annual Cleanup Budget for the Site), past Consent Orders and in continuance with past billing

practices, within forty-five (45) days after receipt of an itemized invoice from the Department, Respondent must pay to the Department a sum of money which represents reimbursement for State Costs in the amounts budgeted for in the approved Annual Cleanup Budgets or any amendments thereto, other than those identified in Subparagraph VI.A, for work performed at or in connection with the Site through and including the Termination Date, as provided at 6 NYCRR § 375-1.5(b)(3).

C. Personal service costs will be documented as provided by 6 NYCRR § 375-1.5(b)(3)(ii). The Department will not be required to provide any other documentation of costs, provided however, that the Department's records will be available consistent with, and in accordance with, Article 6 of the Public Officers Law.

D. Such invoice will be sent to Respondent at the following address:

Brendan Mullen, P.E.
Cleanup Manager
RACER Trust
500 Woodward Avenue, Suite 2650
Detroit, Michigan 48226
(201) 247-4890
bmullen@racertrust.org

Scott Hamilton
Chief Financial Officer
RACER Trust
500 Woodward Avenue, Suite 2650
Detroit, Michigan 48226
(313) 506-2837
shamilton@racertrust.org

E. Each such payment must be made payable to the Department of Environmental Conservation and sent to:

Bureau of Program Management
Division of Environmental Remediation
New York State Department of Environmental Conservation
625 Broadway
Albany, New York 12233-7012

F. Each party must provide written notification to the other within ninety (90) days of any change in the foregoing addresses.

G. Respondent may contest invoiced costs invoiced pursuant to Paragraph VI.B as provided at 6 NYCRR § 375-1.5(b)(3)(v) and (vi).

H. If any negotiable instrument submitted to the Department pursuant to this Order is not honored when presented for payment, the invoice will be deemed unpaid, and Respondent will be responsible for all charges incurred by the Department with respect to such dishonor in accordance with State Finance Law § 19.

I. Payments not received within the time periods specified in Subparagraph VI.B above or 6 NYCRR § 375-1.5(b)(3) will be a violation of this Order, subjecting the Respondent to penalties pursuant to Subparagraph IV.A. In addition, failure to make timely payments will subject Respondent to interest calculated from the date payment was due and/or late payment charges and collection fees in accordance with State Finance Law § 18.

VII. Reservation of Rights

A. Except as provided at 6 NYCRR § 375-1.9 and § 375-2.9, nothing contained in this Order will be construed as barring, diminishing, adjudicating, or in any way affecting any of the Department's rights or authorities, including, but not limited to, the right to require performance of further investigations and/or response action(s), to recover natural resource damages, and/or to exercise any summary abatement powers with respect to any person, including Respondent.

B. In accordance with the Trust Consent Decree and except as otherwise provided in this Order, Respondent specifically reserves all rights and defenses under applicable law respecting any Departmental assertion of remedial liability and/or natural resource damages against Respondent, and further reserves all rights respecting the enforcement of this Order, including the rights to notice, to be heard, to appeal, and to any other due process. The existence of this Order or Respondent's compliance with it will not be construed as an admission of liability, fault, wrongdoing, or breach of standard of care by Respondent, and will not give rise to any presumption of law or finding of fact, or create any rights, or grant any cause of action, which will inure to the benefit of any third party. Further, Respondent reserves such rights as it may have to seek and obtain contribution, indemnification, and/or any other form of recovery from its insurers and from other potentially responsible parties or their insurers for past or future response and/or cleanup costs or such other costs or damages arising from the contamination at the Site as may be provided by law, including but not limited to rights provided under CERCLA.

VIII. Indemnification

Respondent must indemnify and hold the Department, the State of New York, the Trustee of the State's natural resources, and their representatives and employees harmless as provided by 6 NYCRR § 375-2.5(a)(3)(i). Any indemnification by Respondent shall be subject to the Trust Consent Decree.

IX. Public Notice

A. Within thirty (30) days after the effective date of this Order, Respondent must provide notice as required by 6 NYCRR § 375-1.5(a). Respondent must provide the

Department a copy of such instrument certified by the recording officer to be a true and faithful copy within thirty (30) days of its receipt.

B. If Respondent proposes to transfer by sale or lease the whole or any part of Respondent's interest in the Site, or becomes aware of a proposed or actual transfer of the whole or any part of the Site by any other person, Respondent must, not fewer than forty-five (45) days before the date of transfer, notify the Department in writing of the identity of the transferee and of the nature and proposed or actual date of the conveyance, and must notify the transferee in writing, with a copy to the Department, of the applicability of this Order. However, such obligation will not extend to a conveyance by means of a corporate reorganization or merger or the granting of any rights under any mortgage, deed, trust, assignment, judgment, lien, pledge, security agreement, lease, or any other right accruing to a person not affiliated with Respondent to secure the repayment of money or the performance of a duty or obligation.

X. Environmental Easement

A. If a Department-approved final engineering report for the Site relies upon one or more institutional and/or engineering controls, Respondent (or the owner of the Site) must submit to the Department for approval an Environmental Easement to run with the land in favor of the State which complies with the requirements of ECL Article 71, Title 36, and 6 NYCRR § 375-1.8(h)(2). Upon acceptance of an Environmental Easement by the State, Respondent must comply with the requirements of 6 NYCRR § 375-1.8(h)(2).

B. If the ROD provides for no action other than implementation of one or more institutional controls, Respondent must cause an environmental easement to be recorded under the provisions of Subparagraph X.A. If Respondent does not cause such environmental easement to be recorded in accordance with 6 NYCRR § 375-1.8(h)(2), Respondent will not be entitled to the benefits conferred by 6 NYCRR § 375-1.9 and § 375-2.9.

XI. Communications

A. All written communications required by this Order must be transmitted by United States Postal Service, by private courier service, or hand delivered as follows (telephone numbers and e-mail addresses are provided for reference only):

1. Communication from Respondent must be sent to:

For OU2 related communication:

Richard Mustico, Project Manager
Division of Environmental Remediation
New York State Department of Environmental Conservation
625 Broadway, 12th Floor
Albany, New York 12233-7013
Richard.Mustico@dec.ny.gov

For OU1 related communication:

Robert Edwards, Project Manager
Division of Environmental Remediation
New York State Department of Environmental Conservation
625 Broadway, 12th Floor
Albany, New York 12233-7013
Robert.Edwards@dec.ny.gov

(2 hard bound copies of work plans are required, as well as and 1 one electronic copy on disk).

with copies to:

Mark Sergott
Bureau of Environmental Exposure Investigation
New York State Department of Health
Empire State Plaza
Corning Tower, Room 1787
Albany, New York 12237
(518) 402-7860
Mark.Sergott@health.ny.gov

(1 bound copy and 1 electronic copy on disk)

Patricia Simmons Pierre
Remedial Program Manager
USEPA Region 2
290 Broadway, 20th Floor
New York, New York 10007-1866
Pierre.Patricia@epa.gov

(1 bound copy and 1 electronic copy on disk)

Harry Warner
Regional Environmental Remediation Engineer
New York State Department of Environmental Conservation
615 Erie Boulevard West
Syracuse, New York
Harry.Warner@dec.ny.gov

(1 bound copy and one electronic copy on disk)

Margaret A. Sheen, Esq.
Office of General Counsel
New York State Department of Environmental Conservation

615 Erie Boulevard West
Syracuse, New York 13204-2400
Margaret.Sheen@dec.ny.gov

Argie Cirillo, Esq.
Assistant Regional Counsel
Office of Regional Counsel
USEPA Region 2
290 Broadway, 20th Floor
New York, New York 10007-1866
cirillo.argie@epa.gov

Maureen Schuck
New York State Department of Health
Bureau of Environmental Exposure Investigation
Empire State Plaza
Corning Tower, Room 1787
Albany, NY 12237
(518) 402-7860
Maureen.Schuck@health.ny.gov

(Correspondence only)

2. Communication made from the Department must be sent to:

Brendan Mullen, P.E.
Cleanup Manager
RACER Trust
500 Woodward Avenue, Suite 2650
Detroit, Michigan 48226
(201) 247-4890
bmullen@racertrust.org

with copies to:

Clare F. Leary, P.E.
O'Brien & Gere
333 W. Washington Street, P.O> Box 4873
Syracuse, New York 13221-4873
Mobile: (315) 956-6472
Clare.Leary@obg.com

Carl P. Garvey
General Counsel
RACER Trust
500 Woodward Avenue, Suite 2650

Detroit, Michigan 48226
(734) 890-8591
cgarvey@racertrust.org

B. The Department and Respondent reserve the right to designate additional or different addressees for communication upon written notice to the other.

C. Each party must notify the other within ninety (90) days after any change in the addresses in this Paragraph XI or in Paragraph VI.

XII. Dispute Resolution

In the event disputes arise under this Order, Respondent may, within fifteen (15) days after Respondent knew or should have known of the facts which are the basis of the dispute, initiate dispute resolution in accordance with the provisions of 6 NYCRR § 375-1.5(b)(2). Nothing contained in this Order will be construed to authorize Respondent to invoke dispute resolution with respect to the remedy selected by the Department in the RODs or any element of such remedy, nor to impair any right of Respondent to seek judicial review of the Department's selection of any remedy.

XIII Tenant Use

A. Definitions

1. "Tenant" is defined as an individual or entity which will occupy and use a portion of the Site under the terms of a Lease. The term Tenant does not include the Ground Lessee under any ground lease at the Site; and

2. "Lease" is defined as a lease arrangement between: (a) the Respondent as Lessor and a Tenant as Lessee; or (b) a sublease agreement between the Developer as Ground Lessee/SubLessor and a Tenant as SubLessee. The term shall not include a ground lease.

B. No later than ten (10) days prior to the leasing of a portion of the Site, Respondent or its designee shall submit to the Department for its information a "Tenant Use Notice" that sets forth a general description of the prospective Tenant's business and a general description of the prospective Tenant's activities proposed to be undertaken at the Site.

C. Following receipt of the Tenant Use Notice, the Department shall, as expeditiously as possible, determine whether, on the basis of the information provided, the proposed Tenant Use:

1. constitutes a "substantial change of use" as that term is defined under 6 NYCRR 375-2.2(a); and

2. is consistent with 6 NYCRR Part 375 and the Consent Order and its remedial objectives.

D. If the Department determines that the proposed Tenant Use does not constitute a "substantial change of use" and is consistent with 6 NYCRR Part 375 and the Consent Order

and its remedial objectives, the Department shall provide the Respondent with a letter (the "Form Tenant Use Letter") in which it sets forth its determination under the terms set forth therein.

E. Nothing contained in this Order shall be deemed to waive the obligation of any prospective Tenant to obtain any necessary permits or any other approvals which may be necessary under applicable federal, state or local laws, rules, regulations and ordinances, including but not limited to, the Resource Conservation and Recovery Act and the Clean Water Act to operate at the Site ("Approvals") and to abide by the requirements of the New York State Environmental Quality Review Act ("SEQRA") in obtaining such Approvals.

XIV. Tenant Lease Terms

A. Respondent or its designee shall insert in each Lease for Tenants of the Site uniform provisions which:

1. notify the Tenant of this Consent Order and any future addenda and amendments in effect during the period of the tenancy and provide that copies of these documents shall be maintained at the Site for Tenant review;

2. grant the Respondent and/or any of the Respondent's directors, officers, employees, servants, successors and assigns access to the leasehold space, at reasonable times when possible under the circumstances, for the purpose of performing the Department-approved remedial alternative identified in the ROD(s).

3. grant consent to the entry upon the leasehold space or areas in the vicinity of the leasehold space, which may be under the control of the Respondent and/or any of the Respondent's directors, officers, employees, servants, successors and assigns, by any duly designated employee, consultant, contractor or agent of EPA, the Department or any New York State agency, at reasonable times when possible under the circumstances, for purpose of inspection, sampling, and testing and to ensure Respondent's compliance with the Consent Order and any future addenda and amendments and for overseeing the implementation of the Department-approved remedial alternative identified in the Department ROD(s). Any such individual authorized to enter the Site pursuant to this subparagraph shall comply with any health and safety plan applicable to the leasehold space; and

4. prohibit the use of any floor drains, trenches, sumps or sewers associated with the inactive process and storm water sewer system. Notwithstanding the foregoing, any Tenant may use the sanitary sewer system so long as such use is in compliance with all applicable laws.

B. Each Lease for the Tenants of the Site shall also have a provision that prohibits any "substantial change of use" of the leasehold space as that term is defined under 6 NYCRR 375-2.2(a) without prior written approval by the Respondent or its designee. The foregoing obligation is in addition to the regulatory requirement regarding "substantial change of use" that applies to Respondent.

XV. Miscellaneous

A. Respondent agrees to comply with and be bound by the provisions of 6 NYCRR Subparts § 375-1 and § 375-2; the provisions of such Subparts that are referenced herein are referenced for clarity and convenience only and the failure of this Order to specifically reference any particular regulatory provision is not intended to imply that such provision is not applicable to activities performed under this Order.

B: Respondent must retain professional consultants, contractors, laboratories, quality assurance/quality control personnel, and third party data validators ("Respondent's Contractors") acceptable to the Department to perform its obligations under this Order. If the Department has not previously approved Respondent's Contractors for the work required by this Order, Respondent must submit the Contractors' qualifications to the Department a minimum of thirty (30) days before the start of any activities for which each such Contractor will be responsible. The Department's approval of each such Contractor must be obtained prior to the start of work by that Contractor. The responsibility for the performance of all Contractors retained by Respondent must rest solely with Respondent. Subject to the requirements of this Subparagraph, Respondent retains the right to select or change firms or individuals in its sole discretion.

C. In accordance with 6 NYCRR 375-1.6(4), the Department must be notified at least seven (7) days in advance of, and be allowed to attend, any field activities to be conducted under a Department approved work plan, as well as any pre-bid meetings, job progress meetings, substantial completion meeting and inspection, and final inspection and meeting; provided, however that the Department may be excluded from portions of meetings where privileged matters are discussed.

D The Department may exempt Respondent from the requirement to obtain any state or local permit or other authorization for any activity conducted pursuant to this Order in accordance with 6 NYCRR § 375-1.12(b), (c), and (d).

E. 1. Respondent must use best efforts to obtain all Site access, permits, easements, approvals, institutional controls, and/or authorizations necessary to perform Respondent's obligations under this Order, including all Department-approved Work Plans and the schedules contained therein. If, despite Respondent's best efforts, any access, permits, easements, approvals, institutional controls, or authorizations cannot be obtained, Respondent must promptly notify the Department and include a summary of the steps taken. The Department may, as it deems appropriate and within its authority, assist Respondent in obtaining same.

2. If an interest in property is needed to implement an institutional control required by a Work Plan and such interest cannot be obtained, the Department may require Respondent to modify the Work Plan pursuant to 6 NYCRR § 375-1.6(d)(3) to reflect changes necessitated by Respondent's inability to obtain such interest.

F. Except for any penalties assessed pursuant to Subparagraph IV.A, Respondent's obligations under this Order represent payment for or reimbursement of response costs, and will not be deemed to constitute any type of fine or penalty.

G. 1. The terms of this Order constitute the complete and entire agreement between the Department and Respondent concerning the implementation of the activities required by this Order. No term, condition, understanding, or agreement purporting to modify or vary any term of this Order will be binding unless made in writing and subscribed by the party to be bound. No informal advice, guidance, suggestion, or comment by any representative of the Department will be construed as relieving Respondent of the obligation to obtain such formal approvals as may be required by this Order. In the event of a conflict between the terms of this Order and any Work Plan submitted pursuant thereto, the terms of this Order will control over the terms of the Work Plan(s). Respondent consents to and agrees not to contest the authority and jurisdiction of the Department to enter into or enforce this Order.

2. (a). Except as set forth herein, if Respondent desires that any provision of this Order be changed, Respondent must make timely written application to the Commissioner with copies to the parties listed in Subparagraph XI.A.1.

(b). If Respondent seeks to modify an approved Work Plan, a written request must be made to the Department's project manager, with copies to the parties listed in Subparagraph XI.A.1.

(c). Requests for a change to a time frame set forth in this Order must be made in writing to the Department's project attorney and project manager; such requests will not be unreasonably denied and a written response to such requests will be sent to Respondent promptly.

H. 1. If there are multiple parties signing this Order, the term "Respondent" will be read in the plural, the obligations of each such party under this Order are joint and several, and the insolvency of or failure by any Respondent to implement any obligations under this Order will not affect the obligations of the remaining Respondent(s).

2. If Respondent is a partnership, the obligations of all general partners (including limited partners who act as general partners) under this Order are joint and several and the insolvency or failure of any general partner to implement any obligations under this Order will not affect the obligations of the remaining partner(s) under this Order.

3. Notwithstanding the foregoing Subparagraphs XIV.HI.1 and 2, if multiple parties sign this Order but not all of the signing parties elect to implement a Work Plan, all Respondents are jointly and severally liable for each and every obligation under this Order through the completion of activities in such Work Plan that all such parties consented to; thereafter, only those Respondents electing to perform additional work will be jointly and severally liable under this Order for the obligations and activities under such additional Work Plan(s). The parties electing not to implement the additional Work Plan(s) will have no

obligations under this Order relative to the activities set forth in such Work Plan(s). Further, only those Respondents electing to implement such additional Work Plan(s) will be eligible to receive the Liability Limitation referenced in Paragraph II.H.

I. Respondent will be entitled to receive contribution protection and/or to seek contribution to the extent authorized by 6 NYCRR § 375-1.5(b)(5).

J. Unless otherwise expressly provided herein, terms used in this Order which are defined in ECL Article 27 or in regulations promulgated thereunder will have the meaning assigned to them under said statute or regulations.

K. Respondent and Respondent's successors and assigns will be bound by this Order. Any change in ownership or corporate status of Respondent will in no way alter Respondent's responsibilities under this Order, provided, however, that Respondent will convey its ownership interest in the Site, subject to the Tenant Use and Tenant Lease Terms set forth above in Section XIII and IX, which such provisions shall be fully and affirmatively assigned to and assumed by Respondent's buyer at the time of closing of such conveyance(s) following the Department's advance written approval of such assignment and assumption, which such approval shall not be unreasonably withheld.

L. This Order may be executed for the convenience of the parties hereto, individually or in combination, in one or more counterparts, each of which will be deemed to have the status of an executed original.

M. The effective date of this Order is the 10th Day after it is signed by the Commissioner or the Commissioner's designee.

DATED: OCT 27 2015

MARC GERSTMAN
ACTING COMMISSIONER
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION

By: ______________________

CONSENT BY RESPONDENT

Respondent hereby consents to the issuing and entering of this Order, waives Respondent's right to a hearing herein as provided by law, and agrees to be bound by this Order.

**REVITALIZING AUTO COMMUNITIES ENVIRONMENTAL RESPONSE TRUST**, a New York trust

By: EPLET, LLC, acting solely in its capacity as Administrative Trustee of Revitalizing Auto Communities Environmental Response Trust

By: ______________________

ELLIOTT P. LAWS, not individually, but acting solely in his capacity as Managing Member

~~CITY/STATE OF~~ District of )
) SS.
DIS~~TRICT/COUNTY~~ Columbia )

Before me, a Notary Public in and for said District/County and City/State, personally Elliott P. Laws, not individually, but acting solely in his capacity as Managing Member of EPLET, LLC, a Delaware limited liability company, acting solely in its capacity as Administrative Trustee of Revitalizing Auto Communities Environmental Response Trust, a trust organized and existing under the laws of the State of New York, and acknowledged the execution of the foregoing Order for and on behalf of said company and trust, and who, have been duly sworn, stated that the representations therein contained are true.

Witness my hand and Notarial Seal this 29th day of September, 2015.

Cheryl L. Best

Printed Name: Cheryl Best
Residing in the City/State of Washington District/~~County~~ of Columbia
My commission expires: 11-14-15

CHERYL L. BEST NOTARY PUBLIC DISTRICT OF COLUMBIA

**EXHIBIT "A"**

**Map(s) of Site**

(See attached)




ADAPTED FROM: SYRACUSE WEST, SYRACUSE EAST NEW YORK USGS QUADRANGLE.

GENERAL MOTORS
IFG SITE
SYRACUSE, NEW YORK

**LEGEND**
- OFF-SITE AREAS
- FORMER IFG FACILITY




**SITE LOCATION**

N




APRIL 2014
15388.51418

1:24,000

O'BRIEN & GERE

EXHIBIT "B"
OU 2 RECORD OF DECISION