UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REVITALIZING AUTO COMMUNITIES ENVIRONMENTAL RESPONSE TRUST, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL GRID USA, et al., <br><br> Defendants. | Case No. 5:18-cv-1267-DNH-ATB |

## STATUS REPORT OF DEFENDANTS GENERAL ELECTRIC COMPANY AND LOCKHEED MARTIN CORPORATION

In this case, Plaintiffs Revitalizing Auto Communities Environmental Response Trust and RACER Properties LLC (collectively "RACER Trust" or "Plaintiff") seek to recover remediation costs in connection with Operable Unit 2 (OU2) of the General Motors Inland Fisher Guide Site in Onondaga County, New York ("GM IFG Site"). Since the last telephone conference with the Court, the following has occurred: RACER Trust has (1) filed an Amended Complaint adding numerous additional parties, including LMC (and removing none), (2) made 189 boxes of documents and other documents available for review by the Defendants (which GE and LMC have reviewed), and (3) opted to refrain from submitting a remedial alternatives analysis to the New York State Department of Environmental Conservation ("NYSDEC"), which related to NYSDEC's alleged demand that RACER Trust implement a significantly expanded OU2 remedy at a cost of up to $93.5M, a 10-fold increase in the $8.5M in remediation costs allocated by the U.S. Bankruptcy Court with NYSDEC's consultation and approval (AC[1] at ¶¶27 - 32). RACER Trust alleges that the expanded OU2 area was not contaminated by GM (AC at ¶¶33, 38).

In accordance with the Court's previously imposed stay, the Defendants have not yet filed any answers or motions in response to the Complaint or the Amended Complaint. However, GE and LMC anticipate filing respective motions to dismiss on numerous grounds. Accordingly, GE and LMC respectfully request that a schedule be established for the filing of motions to dismiss and that this matter be stayed pending the Court's resolution of those motions because, if successful, they will be dispositive of the action. GE and LMC further request that, if the motions to dismiss are not fully granted, there be an initial phase of focused discovery concerning the jurisdictional question discussed below and the timeliness of any surviving CERCLA claim(s) so that a dispositive motion on these matters can be filed. Until these critical, threshold issues are resolved, the parties cannot meaningfully engage in the mandatory mediation process.

---

[1] References to "AC" are references to the Amended Complaint recently filed by Plaintiff RACER Trust.

1

As a newly added party, LMC further requests that it be afforded the same opportunity as the initially named Defendants to seek the voluntary dismissal of the claims against it well in advance of the deadlines for responding to the Amended Complaint and for filing motions to dismiss. LMC understands that RACER Trust supports this proposition.

In order to help the Court more fully appreciate the unique circumstances at the heart of this case, this Status Report provides some background information concerning the creation of RACER Trust in GM's bankruptcy proceeding and then briefly summarizes some of the grounds upon which GE and LMC will move to dismiss RACER Trust's claims.

## BACKGROUND

RACER Trust was created by the U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") as an environmental response trust to clean up and position for redevelopment contaminated properties and other facilities that had been owned by General Motors ("GM") before it filed for bankruptcy in 2009 (AC at ¶20), and with respect to which the United States and numerous States, including the State of New York, had filed proofs of claim during the bankruptcy proceeding. The duties and powers of Plaintiff RACER Trust are governed by multiple documents approved by the Bankruptcy Court and signed by the United States, the State of New York, and others, including (*inter alia*) an Environmental Response Trust Consent Decree and Settlement Agreement ("Trust Consent Decree") that became effective on March 29, 2011 (AC at ¶20).

The Bankruptcy Court tasked RACER Trust with the remediation of 89 different properties that GM had contaminated, including impacted off-site areas, using GM funds earmarked by the Court for each such site.[2] In addition to the site-specific funds, a Cushion Funding Account in the total amount of $68,233,823 was established for all 89 properties in the event unknown and unforeseeable conditions arose at any of those locations (AC at ¶24; *see also* Trust Consent Decree at I.7 and ¶¶57-58).[3] However, there is "a presumption against using Cushion Funding" absent a specific showing under the Trust Consent Decree. (*See* ¶55).

One of the properties encompassed by the bankruptcy proceeding is the GM IFG Site, which was administratively divided into two operable units (OU1 and OU2), with OU1 consisting of the main plant property and OU2 consisting of a 9,000 linear-foot stretch of Ley Creek just outside the OU1 property boundary (AC at ¶¶2-4). RACER Trust seeks only the costs associated with the remediation of the OU2 portion of the GM IFG Site, including a greatly expanded area that RACER Trust alleges NYSDEC has added to the OU2 portion of the Site without Bankruptcy Court approval.[4]

---

[2] Three funds were established for each site: (1) a Minimum Estimated Property Funding Account to pay for the agreed upon remediation, (2) a Reserve Property Funding Account to cover additional costs, and (3) a Long Term OMM Property Funding Account to pay for operation, monitoring, and maintenance (Trust Consent Decree at ¶¶16, 17, 22 and 32 - 33).

[3] A lead agency has to seek approval of any Cushion Funding request from the Administrative Trustee and any disputes concerning the use of Cushion Funding must be resolved by the Bankruptcy Court (Trust Consent Decree at ¶58).

[4] *See, e.g.,* AC at ¶¶25 - 41, 133 -141, 408, 422, 425, 431, 433, 438, 444, 449, 453, 458 and Wherefore Clause.

2

The State of New York directly participated in the establishment of the monetary budgets for the GM-IFG Site funding accounts and compromised its claims against GM in exchange for the establishment of those accounts. For the GM IFG Site, and with the State's approval, $22,573,34 in GM funds were allocated for the OU1 remediation and $8,548,471 was allocated for the OU2 remediation (AC at ¶¶30, 37).[5] There is also reserve funding for the GM IFG Site in the approximate amount of $3.1M and OMM funding in the approximate amount of $10.2M (Trust Consent Decree at Attachment A, p.2).

The Administrative Trustee for the Trust, EPLET, LLC, is responsible for implementing the purposes of the Trust, including the development of an annual cleanup budget for each Site that is "consistent with the funding available" (*id.* at 49.i). With regard to the GM IFG Site, the Administrative Trustee submits an annual budget to NYSDEC for approval; in the event of a budget dispute that could potentially cause the ultimate cost of the remediation to exceed the budgeted funding for the Site, the Bankruptcy Court must decide the dispute based on the "totality of the evidence", including whether NYSDEC's request for more money "is based on material information, a material event, or a material condition at the Property that was not reasonably foreseeable at the time [NYSDEC] participated in the development of the funding with respect to the Property." (*id.* at ¶50). There are similar provisions for disputes between the Administrative Trustee and NYSDEC regarding the use of funds from the Cushion Funding Account, which also must be resolved by the Bankruptcy Court (*id.* at ¶58).

As relevant to this case, the Bankruptcy Court has "*exclusive* jurisdiction over any issues relating to (a) approval of budgets and expenditures of budgeted funds . . .", (b) changes to a Property's Minimum Estimated Property Funding . . ., (c) access to Cushion Funding Account funds, [and] (d) disputes involving the Administrative Funding Account . . ." (*id.* at ¶¶39, 102, 110) (emphasis). In the instant case, therefore, the Bankruptcy Court has exclusive jurisdiction over whether NYSDEC can demand, without Bankruptcy Court involvement, the expansion of the OU2 approved remedy, which will have the effect of increasing the amount earmarked by the Bankruptcy Court for the OU2 remediation from $8.5M to up to $93.5M (AC at ¶¶30 - 32). This additional $85M in funds exceeds the $8.5M in the funding account for the OU2 portion of the Site (AC at ¶30) and also exceeds the $3.1M held in reserves for the Site (AC at ¶41); it is also more than the total amount established by the Bankruptcy Court as Cushion Funding for *all* 89 of GM's contaminated sites across the country ($68M). Plaintiff advised this Court during the last conference call that neither it nor NYSDEC had sought the involvement of the Bankruptcy Court with regard to (i) NYSDEC's alleged demand that the OU2 remedy be expanded or (ii) the alleged need for an additional $85M in funding.

1. **Lack of Jurisdiction**

The Amended Complaint is premised on RACER Trust agreeing in some manner to perform an expanded OU2 remediation at the insistence of the NYSDEC and its lack of bankruptcy funding for that expanded remediation (AC at ¶¶ 25 - 41). However, RACER Trust does not have

---

[5] As contemplated by the bankruptcy agreements, RACER Trust thereafter entered into a 2015 Consent Order with NYSDEC, pursuant to which it agreed to remediate the GM IFG Site in accordance with the OU2 Record of Decision.

3

the authority to conduct a remediation that is inconsistent with the remediation and budget approved by the Bankruptcy Court. Further, the Bankruptcy Court has exclusive jurisdiction to resolve any dispute concerning the scope of the OU2 remediation and the significant increase in funding required for that expanded remediation (Trust Consent Decree at ¶¶50, 55-60). RACER Trust cannot be compelled to do the expanded remediation, for which it now seeks response costs, without Bankruptcy Court approval. Such approval is unlikely given the State's participation in the development of the budget for the Site, the compromise of the State's claims in the Bankruptcy Court, the absence of any new information that wasn't reasonably foreseeable or known to the State when it approved the funding budget for the Site (AC at ¶¶28, 35), and the lack of available funding for such a belated, significant expansion in the remedy.

It is unclear whether RACER Trust has voluntarily agreed to perform remedial work in the expanded area or is being compelled, in some manner not identified in the Amended Complaint, to implement such work. Any *sua sponte* agreement to expand the scope of work (and the resulting expenditure of additional funds), would not only be unauthorized, it would also be in direct conflict with RACER Trust's fiduciary duty to its sole beneficiary, the United States, to manage the trust funds for the express purposes for which it was created.

### 2. Standing

RACER Trust was established to conduct, manage and fund environmental actions with respect to GM's properties, to own and manage certain of those properties and to sell or transfer the remediated properties for beneficial use (Trust Agreement at Section IV). However, EPLET, LLC, as the Administrative Trustee for the Trust, is responsible for developing annual remediation budgets and for determining whether a lead agency for a Site, such as NYSDEC, can access funds in the Cushion Funding Account (*id.* at ¶¶49, 57). EPLET, LLC is also the party that is empowered "to prosecute and defend lawsuits or administrative actions or proceedings *on behalf of* the Environmental Response Trust." (2011 Environmental Response Trust Agreement at ¶4.3.10) (emphasis added). EPLET is not a party to this action. Accordingly, there is a significant question as to whether RACER Trust has standing to even bring this action or whether EPLET, as its Administrative Trustee, is the only party with standing to bring this action.

### 3. Statute of Limitations

Any claim RACER Trust ever had under CERCLA Section 107 has long been time-barred, because the physical on-site construction of the remedial action for the GM IFG Site was initiated more than six years before this action was commenced. *See* 42 U.S.C. 9613 (g)(2)(B) (establishing the trigger date for the six-year statute of limitations for cost recovery actions). This is evident from the public record and from the Amended Complaint itself, which alleges that remedial activities associated with the GM IFG Site began before 2004 (AC at ¶¶117, 130). Thus, the statute of limitations would have expired no later than 2010, at the very latest—approximately eight years before this action was filed against the original defendants.

Any claim by RACER Trust under Section 113 of CERCLA is also time-barred. Specifically, the United States settled its CERCLA claims against GM and RACER Trust for the environmental conditions at the GM IFG Site in the judicially approved Trust Consent Decree

4

(Trust Consent Decree at ¶¶30, 93 - 95). Under Section 113(g)(3)(B), RACER Trust would have had three years from the judicial entry of the Trust Consent Decree in 2011 (AC at ¶¶9 and 20) - or until 2014 at the latest - to bring suit. This suit, which was not commenced against the original defendants until 2018, is therefore untimely. Moreover, because RACER Trust's CERCLA §107 claim at the Site was time-barred as of 2010, at the latest, RACER Trust cannot get a second bite of the apple by seeking contribution under CERCLA Section 113 for costs incurred in remediating the same Site pursuant to a subsequent judicially-approved settlement. In other words, RACER Trust cannot rely on the 2011 Trust Consent Decree (or the subsequent 2015 Consent Order) - which was executed *after* its claims for the GM IFG Site became time-barred - to somehow revive its already stale CERCLA claim.[6]

The State law claims are also time-barred under NYCPLR §214(4) (3-year limitations period for property damage claims), NYCPLR §214-c (3-year limitations period running from date of discovery), and NYCPLR §213(1) (6-year default limitations period).

### 4. Failure to Join Necessary Parties

As indicated above, EPLET is a necessary party to this case. NYSDEC is also a necessary party because it is the lead agency for the GM IFG Site and is the party seeking to dramatically change the OU2 remediation approved by the bankruptcy court and to potentially access funds in the Cushion Funding Account. Joinder of NYSDEC as a necessary party under FRCP 19 is not possible, however, because RACER Trust has given the State a covenant not to sue (Trust Agreement at ¶99). The Amended Complaint should therefore be dismissed because a necessary party cannot be added to the case. The matter should proceed, if at all, in the U.S. Bankruptcy Court.

### 5. Navigation Law 181(5)

RACER Trust has asserted a claim against GE under Section 181(5) of the Navigation Law. However, only faultless landowners can seek recovery under this section. Nav. Law §§172(3) and 181(5). *See, e.g., Niagara Mohawk Power Corp.*, 596 F.3d at 137 (holding that "under the language of § 181, NiMo cannot pursue claims against the defendants because NiMo is at fault for at least some of the petroleum discharge at the site"); Because RACER Trust is a successor to GM, which was directly involved in and responsible for discharging oil at the GM IFG Site, RACER is not a faultless landowner entitled to seek relief under Section 181(5).

### 6. State Preemption

RACER Trust has asserted state law claims for restitution, contribution, and indemnity, among others. These state law claims are premised on the same factual allegations asserted in support of the CERCLA cost recovery and contribution claims. Accordingly, they are federally

---

[6] This is true regardless of the mere administrative distinction between OU1 and OU2. *See, e.g., N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 235 - 236 (2d Cir. 2014) (adopting a "One Site - One Remedy" rule, rejecting the argument that the remedial work done at the OU2 portion of the site was separate from the OU1 work for purposes of the commencement of the statute of limitations and finding that NYSEG's CERCLA claims relating to OU2 were therefore time-barred).

5

preempted. *See, e.g., Niagara Mohawk Power Corp.,* 596 F.3d at 118 (state law contribution, indemnity and unjust enrichment claims were federally preempted).

### 7. Additional Grounds for Dismissal

This status report is not meant to be an exhaustive summary of the grounds upon with GE and LMC intend to bring their anticipated motions to dismiss. To the contrary, it is possible, and indeed very likely, that each party will advance additional arguments, including arguments based upon party-specific facts and arguments responding to party-specific allegations in the Amended Complaint.

### 8. Voluntary Dismissal

As discussed above, because LMC believes that it is named in the Amended Complaint based on erroneous factual information, it respectfully requests the same opportunity to pursue voluntary dismissal with RACER Trust, while the deadline to respond to the Amended Complaint remains stayed, that was afforded to Defendants named in the original Complaint. LMC understands that RACER Trust supports this request.

## CONCLUSION

Given the serious questions regarding the jurisdiction of this Court and the timeliness of Plaintiffs' claims, along with the other issues raised above, Defendants GE and LMC respectfully propose the following schedule:

1. 30 days after the status conference - Deadline for the parties newly named as Defendants in the Amended Complaint to submit requests for voluntary dismissal based on factual errors.
2. 30 days after submission of requests for voluntary dismissal - RACER Trust responds to all requests for voluntary dismissal.
3. 90 days after the status conference - Motion(s) to Dismiss must be filed with supporting briefs.
4. 60 days after the Motions to Dismiss are filed - Plaintiffs file their responses
5. 30 days after Plaintiffs' Responses are filed - Defendants file their replies
6. 160 days after final decision on Motions to Dismiss – If the CERCLA claims are not dismissed, Parties engage in an initial phase of focused discovery concerning the jurisdictional question and statute of limitations issue and file dispositive motions on those issues.
7. 30 days after a decision on the dispositive motions on the jurisdictional and statute of limitations issues, the parties shall submit a proposed schedule for and Case Management Order to govern:
    a. Joinder of Parties
    b. Amendment of Pleadings
    c. Discovery
    d. Motions

Dated: May 15, 2019
Albany, New York

Respectfully submitted,

YOUNG/SOMMER LLC

By: _____
Dean S. Sommer, Esq.
Kristin Carter Rowe, Esq.
Attorneys for the Defendants
General Electric Company and
Five Palisades Drive
Albany, NY 12205
(518) 438-9907

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By: _____
Steven T. Miano, Esq.
Peter V. Keays, Esq.
Attorneys for Defendant Lockheed
Martin Corporation (*admissions pending*)
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200